**CONSERVATION LAW FOUNDATION, et al., Plaintiffs,**

**v.**

**Donald EVANS, et al., Defendants.**

**No. CIV.A. 00–1134GK.**

United States District Court, District of Columbia.

May 23, 2002.

---

**35.** An Order consistent with this opinion is being issued contemporaneously with the is- suance of this Opinion.

Russell David Duncan, Coburn & Schertler, Washington, DC, Eric Bilsky, Oceana, Inc., Washington, DC, for Conservation Law Foundation.

Eric Bilsky, Oceana, Inc., Washington, DC, for Center for Marine Conservation, Natoinal Audubon Soc., Natural Resources Defense Council.

Samuel D. Rauch, II, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Lyn Jacobs, U.S. Dept. of Justice, Environmental Division, Washington, DC, Adam Issenberg, U.S. Dept. of Justice, Environmental and Natural, Resources Division, Washington, DC, for William Daley, National Oceanic and Atmospheric Admin., National Marine Fisheries Service.

Lyn Jacobs, U.S. Dept. of Justice, Environmental Division, Washington, DC, Adam Issenberg, U.S. Dept. of Justice, Environmental and Natural, Resources Division, Washington, DC, for Donald Evans.

David E. Frulla, Brand & Frulla, P.C., Washington, DC, for Associated Fisheries of Maine, Inc., City of Portland, ME, City of New Bedford, MA., Trawlers Survival Fund.

Eldon VanCleef Greenberg, Garvey, Schubert & Barer, Washington, DC, for Northeast Seafood Coalition.

Kirsten Engel, Commonwealth of Mass.—Atty. General's Office, Boston, MA, for Commonwealth of Mass.

Mark A. Randlett, Office of the Attorney General, Augusta, ME, for State of Maine.

James L. O'Dea, III, O'Dea & Associates, Washington, DC, for Paul Parker, Craig A. Pendleton, Northwest Atlantic Marine Alliance, Inc., Stonington Fisheries Alliance, Saco Bay Alliance, Cape Cod Commercial Hook Fishermen's Ass'n., Inc.

Jennifer Patterson, Office of Attorney General of N.H., Concord, NH, Peter C.L. Roth, State of New Hampshire/Atty. Gen., Concord, NH, for State of New Hampshire.

Gerald F. McAvoy, Rhode Island Department of Environmental Management, Providence, RI, for State of Rhode Island.

## ORDER

KESSLER, District Judge.

The Court has received the various motions for reconsideration of its Remedial Order, issued April 26, 2002, filed by the Conservation Law Foundation, the federal Defendants, Northeast Seafood Coalition, the State of New Hampshire, the State of Maine, the Commonwealth of Massachusetts, the State of Rhode Island, Stonington Fisheries Alliance, Saco Bay Alliance, Northwest Atlantic Marine Alliance, Cape Cod Commercial Hook Fishermen's Association, Craig A. Pendleton, Paul Parker, Associated Fisheries of Maine, Inc., the City of Portland, Maine, the City of New Bedford, Massachusetts, and the Trawlers Survival Fund.

An Opposition to these Motions has been filed by the National Audubon Society, Natural Resources Defense Council, and The Ocean Conservancy.

The Court has carefully considered all the arguments presented and has concluded that the motions for reconsideration should be granted.[1] Movants are indeed correct that the important changes made by the Court in the complex and carefully

---

1. The Opposition is simply incorrect in arguing that Movants have failed to meet the standard for reconsideration under Fed.R.Civ.P. 59(e). As noted, *infra,* the moving parties have provided new evidence and have demonstrated manifest injustice, both of which provide more than sufficient justification for granting the motions for reconsideration.

crafted Settlement Agreement Among Certain Parties ("Settlement Agreement") would produce unintended consequences. Those changes would (1) not only fail to produce the results the Court was seeking to obtain, but might further imperil the particular vulnerable species for which the Court was trying to provide additional protection; (2) seriously unbalance the comprehensive partial Settlement Agreement which settling parties intended to be implemented as an integrated whole; and (3) cause grave economic and social hardship, as well as injustice to individuals, to families, to fishing communities, and to surrounding cities and states.[2]

As Movants have noted in their papers, several of the changes made in the partial Settlement Agreement were never briefed or fully explored before the Court, even though some of them were advocated for by the government and other parties in the individual briefs filed during the lengthy process of briefing and mediation. The development of an appropriate remedy in this case is particularly complex given the vital interests that are at stake. The Court is mindful, not only of the importance of protecting the New England groundfish species, but also of the very real impact any regulation has on those individuals and communities that depend, and have depended for generations, on such fishing. The experience of the litigants, the public, and the Court during these last three months of intense work on development of a remedial order demonstrates the need for a participatory, collaborative, deliberative process that will thoroughly and thoughtfully explore, on

the basis of the most current and widely accepted scientific data,[3] the complexities of the issue and its many interrelated elements. The Court hopes that the experience with the mediation process, and the productive working relationships which developed during that process, can continue to motivate and guide the parties as all of them focus on the development of Amendment 13.

Wherefore, it is this 23rd day of May 2002 hereby

**ORDERED** that the Court's Remedial Order of April 26, 2002, and its Amended Remedial Order of May 1, 2002, are **vacated**; and it is

**FURTHER ORDERED** that all motions for reconsideration are **granted** insofar as they request adoption of the provisions of the Settlement Agreement Among Certain Parties; and it is

**FURTHER ORDERED** that the Settlement Agreement Among Certain Parties, dated April 16, 2002, shall be **implemented** according to its terms, and this Court shall retain jurisdiction until promulgation of Amendment 13; and it is

**FURTHER ORDERED** that the Secretary shall, as was agreed in the Stipulated Order submitted to the Court on April 18, 2002, **promulgate** an **Amended Interim Rule,** to become effective no later than **June 1, 2002,** to reduce overfishing during the first quarter of the 2002–2003 fishing season; and it is

**FURTHER ORDERED** that the Secretary shall, as was agreed in the Stipulated Order submitted to the Court on April 18,

---

2. It would appear that some interests still went unrepresented in the mediation process despite efforts at involving all concerned. See, for example, the letter from the N.H. Hook Fishermen's Association, in Appendix A, which includes all post-Remedial Order correspondence received by the Court.

3. National Standard Two requires use of "the best scientific information available." 16 U.S.C. § 1851(a)(2).

2002, **promulgate** an **Amended Second Interim Rule,** to become effective no later than **August 1, 2002,** to reduce overfishing beginning with the second quarter of the 2002–2003 fishing season, beginning August 1, 2002, and continuing until implementation of a Fishery Management Plan Amendment that complies with the overfishing, rebuilding, and bycatch provisions of the SFA; and it is

**FURTHER ORDERED** that the Secretary shall, as was agreed in the Stipulated Order submitted to the Court on April 18, 2002, promulgate, no later than **August 22, 2003,** a **Fishery Management Plan Amendment** that complies with the overfishing, rebuilding, and bycatch provisions of the SFA; and it is

**FURTHER ORDERED** that the Secretary shall, no later than **December 1, 2002,** develop, prepare, publicize, and make public the most current and reliable scientific information available to enable completion of the Fishery Management Plan Amendment referred to in the preceding paragraph no later than August 22, 2003; the Secretary shall, no later than **December 1,** 2002, calculate the TAC for all species governed by Amendment 9; and it is

**FURTHER ORDERED** that for all gear sectors, NMFS shall provide 5% observer coverage, or higher, if necessary to provide statistically reliable data. Effective May 1, 2003, NMFS shall provide 10% observer coverage for all gear sectors, unless it can establish by the most reliable and current scientific information available that such increase is not necessary; and it is

**FURTHER ORDERED** that the present action is temporarily **stayed** pending such further proceedings as may be required with respect to each of the three administrative actions set forth above; and it is

**FURTHER ORDERED** that the parties shall submit a Joint Praecipe no later than **September 5, 2002,** informing the Court of the steps that have been taken to comply with this Order and to meet the deadlines herein for December 1, 2002, and August 22, 2003.

## APPENDIX A

 

The Honorable Judge Gladys Kessler
US District Court for the District of Columbia
Fax #: 202–354–3442

April 26, 2002

Dear Honorable Judge Kessler,

Regarding the groundfish case:

The difference of 100 pounds more or less in the open–access hand–gear fishery will not affect the outcome of your ruling (it can't). But it does affect the smallest of the boats in the fishery.

All other categories of vessels are able to land enough fish to obtain a fair day's wage. Why should those that have the least be penalized 33–1/3%?

Please consider leaving the limit at 300 pounds.

Thank you for your consideration.

Richard W. Abele
66 Capt. Walsh Road
Dennis, MA 02638
(508) 385–0969

JAN-1-1999 12:18P FROM:

TO: 1010457120235434442 P:1/1

To: JUDGE GLADYS KESSLER IN THE UNITED STATES DISTRICT
COURT
 FOR THE DISTRICT OF COLOMBIA

CONSERVATION LAW FOUNDATION, **RECEIVED**
et al
 Plaintiffs,
 Case No. 1:00CVO1134GK **APR 2 9 2002**
 v.
DONALD L. EVANS, et al. CHAMBERS OF
 Defendant JUDGE KESSLER

I am a commercial fisherman who owns a small boat. The Interim actions that will be put in place May 1, 2002 are designed to put the Small boats out of business. 80 PERCENT of the allowable catch is caught by the large vessels. These vessels are allowed to fish 120 to 150 days per year. The small vessels get 88 days per year. If NMFS and all the Intervenors wanted to reduce overfishing and save the family owned small commercial fisherman a simple approach would be to REDUCE THE 120 DAY TO 150 DAY FLEET TO 88 DAYS. Your current proposal will either make me bankrupt or lost at sea. These proposals are utter madness, they will create undue risks to human lives at sea. INDIVIDUAL BOAT HARD TAC's is the only answer If this is not a plausible solution at the present time, reducing the large fleets DAYS AT SEA to 88 days at sea would eliminate overfishing. I suppose that big money fleet owners have more to loose but atleast they won't loose their homes or their lives or their ability to put food on the table.

SINCERELY
George l Amarantides 603-679-2033
Rte 27 w, P.O. box 267
Epping, NH 03042 FV EvangelineTrail NMFS # *146944*

George L Amarantides
April 28, 2002

*00-1134*

263 Summer Street
Boston, MA 02210
Tel 617-303-3660
Fax 617-303-3661

**RECEIVED**

**APR 3 0 2002**

CHAMBERS OF
JUDGE KESSLER

April 29, 2002

Judge Gladys Kessler
U.S. District Court
District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

Dear Judge Kessler:

On behalf of *Salt Water Sportsman* magazine's 500,000 readers nationwide, I am requesting clarification of measures 11, 12, and 34 in your Remedial Order, Civil Action No. 00-1134.

Measure 11 indicates that party/charter vessels in the Gulf of Maine are limited to ten cod/haddock. We assume that this actually means *anglers fishing aboard party/charter vessels in the Gulf of Maine are limited to 10 cod/haddock*, as this is how (per-person bag limit) party boats are currently managed in this fishery. Furthermore, ten fish for a 50-passenger party fishing vessel, for instance, would clearly be unreasonably restrictive, amounting to one-fifth of a fish per person. Ten *cod per person* is the intent of the measure contained in the Compromise Document.

Measure 12 limits private recreational vessels to ten cod. Again, we assume this is *ten cod per person*, consistent with the way private vessels are currently managed.

Measure 34 refers to "five cod creels." Does this in fact mean five cod per person? The term "creel" is rarely, if ever, used in marine fishery management, although it does mean "in possession per person" in fresh water management. This measure also seems inconsistent with Measures 11 and 12, which refer to "vessel" limits.

Thank you very much for any clarification you can offer. There is obviously a tremendous social and economic disparity between "per vessel" and "per person," and this needs to be resolved in the ruling;

Sincerely,

Barry Gibson
Editor

BJG:mt

**⟨♦Time4**
M E D I A

**62**

Roy A. Gavasso
50 Gibson Road
Orleans, MA 02653

April 12, 2002

Judge Gladys Kessler
U.S. District Court
Washington, D.C. 20500

**RECEIVED**

APR 3 0 2002

CHAMBERS OF
JUDGE KESSLER

Dear Judge Kessler:

As a sport and recreational fisherman here in the northeast, I am concerned, along with many of my peers, that certain fishing regulations presently being proposed and forwarded by special interests in the commercial fishing sector not only fail to consider sport/rec fishing interests in favor of their own but also seem to purposely ignore the overall impact of the preponderant majority (i.e., sport/rec fishermen). We consider their proposals to be mostly self-serving and unfair to the sport/rec sector because:

1. Sport/rec fishermen would be disproportionately penalized because over-fishing, by-catch (incidental killing of other species) and habitat destruction, which are the main cause and effect of the present resource dilemma, was created only by commercial fishing methods, not by sport/rec fishing methods.

2. Sport/rec fishermen would be penalized disproportionately because, as records prove, the methods, efficiency and motives of industrial-type fishing results in a far greater catch ratio and depletion of the resource than sport/rec fishing methods. Furthermore, sport/rec fishermen generally have a keener sensitivity and awareness for the resource than monetarily motivated commercial fishermen.

3. Commercial fishermen are being rewarded by receiving mitigating benefits despite their apparent transgressions, whereas sport/rec fishermen who neither expect nor receive anything, must support them.

4. Sport/rec fishermen and all the ancillary businesses associated with the sport/rec sector contributes far more to our overall economy than commercial fishing does. Therefore, any detrimental effect on the sport/rec sector would also impact a greater part of the economy.

To be fair in imposing corrective regulations, ratios off

- 2 -

each species and how each sector has impacted them must be established. Economic impact factors must also be established. Only then would they become equitable in establishing percentages of responsibility and any subsequent regulatory consequences for each side without discrimination.

We are hoping you will consider our reasoning in this important decision and that you will support regulations that are fair and just to all while also protecting and restoring the overall resource.

Thank you for your attention and consideration.

Respectfully,

Roy A. Gavasso
Cape Cod, MA

**Yankee Whale Watch • Deep Sea Fishing • Cruises**
**Dry Tortugas National Park Ferry • Nantucket Whale Watch**

May 1, 2002
Judge Gladys Kessler
US District Court
District of Columbia
333 Constitution Ave, N.W.
Washington, D.C. 20001

**RECEIVED**

MAY 3 2002

CHAMBERS OF
JUDGE KESSLER

Dear Judge Kessler,

I am Captain Jerry Hill of Yankee Fleet, a passenger fishing vessel Co. in Gloucester, Massachusetts. I am requesting clarification of measure #11 and #34 in your Remedial Order, Civil Action No. 00-1134, on behalf of our thousands of anglers.

Measure #11 specifies that "party/charter vessels are limited to ten cod/haddock". We assume, (and NMFS has interpreted) this to mean 10 cod/haddock per person as this is how passenger fishing vessels have been managed in this fishery. NMFS has also interpreted it to mean 10 cod/haddock per trip (whether ½ day, all day, or multi-day in nature) contrary to their prior specification of a bag limit per day rather than per trip.

Measure #34 similarly specifies "five cod creels". Does this mean five cod per person, and again by trip, regardless of trip length, or by day as has been the case in past measures.

Thank you very much for any clarification you might offer as there are vast consequences and disparities between "per vessel" and "per person" and "per trip" and "per day".

In closing, were I offered the opportunity to suggest the text of any possible clarification, I would suggest as follows:
Re Remedial Order #11 "Limit all charter/party recreational vessels in the Gulf of Maine to 10 cod/haddock" per person per day.
Re Remedial Order #34 "In the Gulf of Maine, limit all charter/party and recreational vessels to five cod" per person per day "December 1 through March 31"

Thank you again for your possible clarification.

Respectfully yours,

Capt. Alan G (Jerry) Hill
Yankee Fleet

CC.
Ms. Patricia Kurkel. Regional Administrator National Marine Fisheries Service
Thomas Hill, Chairman N.E. Fisheries Council
Barry Gibson, Chairman Groundfish Committee N.E. Fisheries Council

. 75 Essex Avenue • Gloucester, Massachusetts 01930
(978) 283-0313 • (800)-WHALING Nationwide • FAX (978) 283-6089
www.yankeefleet.com

MEMBER NAPVO

MEMBER NTA

MAY-9-2002 09:33P FROM:
DST 10:33p

TO:1010457120023543442 P:1/2

98-23?
RECEIVI
MAY 1 0 2002
CHAMBERS OF
JUDGE KESSLER

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CONSERVATION LAW FOUNDATION,et,al.,

PLAINTIFFS,

V.

CA No. 001134-GK

DONALD EVANS,
SECRETARY OF COMMERCE,et al.,

DEFENDANTS

## DECLARATION OF GEORGE L AMARANTIDES

I George L Amarantides, do herby declare and state as follows:

1. I am the owner of the F/V Evangeline Trail, a 44 foot trawler with a homeport of Portsmouth,New Hampshire.

2. I started fishing in 1978 aboard a scallop vessel after serving in the US Navy from 1972 to 1976. I worked for the department of defense from 1983 to 1991. A reduction in force, RIF, due to the end of the cold war, ended my position at Pease Air Force Base in 1991, although i was offered a temporary position as motor vehicle operator. In 1994 I return to the only trade i enjoyed in my youth,fishing.

3. I will be bankrupt by the terms of the settlement agreement between certain parties,in regards to the conservationists law suit victory against the federal agency.

4. 88 days at sea in fishing year 2000-2001 were not enough to meet my financial obligations. My vessel suffered engine failure which resulted in my inability to fish in the last quarter of the fishing year 2001. I accumulated 23000 in debt just so i could go fishing. For the 2001 tax year i carried over -24000 dollars in allowable debt.

5. I caught over my limit of cod fish on certain days, (when the fishing was

**66**

good) that i had to shovel over. I shoveled over 5000 pounds of dead cod fish one day because i had no choice. I returned the next day and caught my limit of 400 pounds.The price of flounder droped to a low of 25 cents a pound which forced me to target cod fish which i did not want to target because my primary goal is abundant marine resources. The canadians were allowed to export yellow tail flounder from Georges Bank to the US due to the free trade act.

6. In 2002-2003 I will be allowed to fish 18 days as far as i can figure out the recipe.I am not quite sure. I do know that 88 days were not enough for me to break even because of mechanical failure,gear loss,family issues and reduction in shrimp season.

7. Therefore, I plead with the court to DISHONOR the settlement agreement and disallow all parties and Put IFQ'S in place.Individual Boat Fish Quota's.I also encourage the court to mandate gear research that will address discards in all fisheries.I also encourage the court to limit all vessels to 88 days at sea.

FURTHER DECLARANT SAYETH NOT

SIGNED UNDER THE PENALTIES OF PERJURY THIS 9TH DAY OF MAY 2002

*George L Amarantides*
George L Amarantides

*MAY 9, 2002*

DECLARATION OF George L Amarantides- Page 2

"Welch family"
<lpwelch@attbi.com>
05/12/02 09:02 PM

To: <GLADYS_KESSLER@DCD.USCOURTS.GOV>
cc:
Subject: Concerned for the future of my family!

I have a great concern for the fishermen, but this is also personal. My husband has been a trip gillnet fishermen for 25 years and I hope he will continue for another 25 years. **Trip gillnet fishermen conduct a fishery that is size selective, habitat friendly, and has very little discard (around 3%) and this has been proven by observer coverage since 1989.** In addition, trip gillnetting is the most labor intensive fishery in New England, therefore, a small group of fishermen choose this type of fishery, which inturn promotes very little representation.

He was able to survive amendment 7 because he diversified his catch into Monkfish and Dogfish and now these fisheries are closed to him. Furthermore, these fisheries will not be counted towards days-at-sea (DAS), which is a great loss to him. His DAS have been reduced from 141 DAS to 54 DAS.

The 50 net limit in the Georges Bank area is a reduction of 80% of his fishing effort, with no benefits towards bycatch or trip overages. He has been closed out of a huge area. The Magnus Stevens Act prohibits discrimination between gear sectors without scientific basis. No other sectors were asked to give up 80% of there fishing power.

He has over $50,000 in 6-inch mesh which is no longer usable.

He has lost all four of his crewmen in the last week.

**All this in a time when the fish stocks are increasing!**

My husband is an active participant in responsible fishing conferences and has spoken in Canada and Europe. Where his particular fishery, trip gillnetting, is recognized as one of the most sustainable fisheries. **We need to protect the trip gillenetters, not put them out of business.**

Let's protect both the ocean and the fishermen!

Concerned and scared for the well being of my family! Fishing is his/our livelihood!
Leslie P. Welch

68

## NH HOOK FISHERMAN'S ASSOCIATION

91 FAIRVIEW AVE
PORSTMOUTH NH 03801

May 9, 2002

**Judge Gladys Kessler**
US District Court
District of Columbia
333 Constitution Ave, N.W.
Washington, D.C. 20001

RECEIVED

MAY 1 4 2002

CHAMBERS OF
JUDGE KESSLE

Your Honor,

I am representing a small group of active NH Commercial Fishermen with the Open Access Groundfish Permits, employing the use Rod and Reel or Handlines to catch Cod, Haddock and Pollack along with other regulated and non regulated marine fish. We generally fish the Inshore waters of the Gulf of Maine from vessels ranging from 17' to less then 35'. Historically the landings from the Hook and Line fishery accounted for less then 1.4% of the total catch of Atlantic Cod from 1970 to the present (see attached charts) and Cod is the principle species landed.

Referring to the attached graphs, it has been a stable fishery with insignificant swings in landings regardless of how many permits have been issued. The average landings for this type of fishery, over the past 30 years is less then 500 MT for Cod. There is currently approximately 1338 (as of 5/6/02) fishermen who hold this permit up and down the coast. Out of this number there has been historically, on average, less then 30 active fishermen (see attached letter from NMFS) who have landed more then 500 lbs. of groundfish, per year.

Rod and Reel/Handline Commercial Fishing is the most environmentally friendly method of fishing and it is the oldest. Each fish is caught individually and if undersized, released back alive into the ocean. There is no discards since we stop fishing when our quota is filled.

The NH Hook Fishermen's Association would like to provide you with information that was not brought to the negotiations, which will hopefully convince you to reconsider Part B of the ruling, limiting the open access permitted Fishermen to 200 lbs. of regulated NE multispecies. Currently the regulation is 300 lbs. of cod/haddock combined.

Information and Concerns:

- **79** Open Access permitted vessels landed more then 500 lbs. of Atlantic Cod in the year 2001 out of 1,811 Fishermen in the Rod and Reel/Handline Open Access permit category. This is a very small percentage of Fishermen who landed a very small quantity of fish. The Conservation groups recognized this when the 200 lbs. trip limit was proposed by Maine, New Hampshire and Rhode Island State Representatives. **The 200 lbs. Trip limit will cause economic hardship to a small group of Fishermen, without any gain toward rebuilding the fish stocks.** Based on this information, we request the trip limit be restored to 300 lbs Cod/Haddock combined.

**69**

- Before any regulations were in place, the Rod and Reel/Handline fishery has had very low landings with insignificant swings as compared to other methods of fishing. The gear itself, the weather and the experience of the fishermen is self-regulating, which restricts the number of fish caught.

- We will be further restricted by the order because of the increasing the size limits for Cod. This will lower the number of fish the open access fishermen will be able to keep. This is fair and equitable since all fishermen will share the new size limits.

- By changing the words of our current regulations "300lbs Cod/Haddock combined" to "200 lbs. of regulated species", the order is not allowing us to fish for stocks that are at or above sustainable levels such as Pollock and Haddock. Other permitted commercial Vessels fishing for groundfish have independent limits based on the status of each fish stock. This is not a fair and equitable restriction. We should not and were not restricted from healthy fish stocks under the current regulations.

- Because there is no discards in this fishery, we request access to the seasonal rolling closures. The only fish commonly caught is Cod and we always fish during the daylight hours. It is understood that Cod spawn at night and we wouldn't be disturbing this from happening. This was proposed by the State of Massachusetts Representatives.

Thank you for reconsidering the decisions mentioned above. If you would like discuss our method of fishing or request any additional information, I can be reached at (603) 431-2577.

Yours sincerely,

*Marc Stettner* 5/9/02

Marc Stettner
President of
NH HOOK FISHERMAN'S ASSOCIATION

**United States Department of Commerce**
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE
NORTHEAST REGION
One Blackburn Drive
Gloucester, MA 01930-2298

May 7, 2002

Marc Stettner
NH Hook Fishermen's Association
91 Fariview Ave.
Portsmouth, NH 03801

Dear Mr. Stettner,

This letter is in response to your request for information regarding the landings of vessels with an Open Access Category H (Handgear) Multispecies Federal vessel permit. Attached is a listing of the number of vessels in this permit category along with the number of vessels that landed more than 500 pounds of Atlantic cod and the number of vessels that landed more than 500 pounds of NE regulated multispecies (using handline gear) combined each year from 1996 – 2001 (Tables 1-3, page 2).

Based on your phone conversation with Ted Hawes on May 6, 2002, your initial request for landings data from 1970 to the present has been updated to include only the most recent and complete permit and landings information from 1996 – 2001.

Permit data are from the Northeast Region Permit Database and landings information were taken from the Dealer Weighout Database. Only trips that were reported in the Dealer Weighout Database as using handline gear were counted. If a gear other than handline gear was used or reported by a Category H multispecies vessel during these years, those trips would not be counted against the total in this analysis. Therefore, the number of Category H multispecies vessels landing more than 500 pounds of A. cod or NE regulated multispecies in a year using handline gear may be underrepresented.

These numbers are preliminary and subject to change. For questions regarding this information, please contact Greg Power or Ted Hawes at (978) 281-9296.

Sincerely,

Patricia A. Kurkul,
Regional Administrator

Table 1. Number of Vessels with a
Multispecies Category H Permit from the
Permit Database.

| YEAR | # of Vessels |
|------|--------------|
| 1996 | 1080 |
| 1997 | 1392 |
| 1998 | 1330 |
| 1999 | 1471 |
| 2000 | 1637 |
| 2001 | 1811 |

$8721/6$ = 1454 Avg 6 yr S

Table 2. Number of vessels using
handline gear with more than 500 lbs. of
Atlantic Cod landings per year from the
Dealer Weighout Database.

| Year | Category H Vessels |
|------|--------------------|
| 1996 | 12 |
| 1997 | 14 |
| 1998 | 21 |
| 1999 | 17 |
| 2000 | 34 |
| 2001 | 79 |

AVG = 30/year

Table 3. Number of vessels using
handline gear with more than 500 lbs. of
Regulated Multispecies landings per year
from the Dealer Weighout Database.

| Year | Category H Vessels |
|------|--------------------|
| 1996 | 13 |
| 1997 | 14 |
| 1998 | 22 |
| 1999 | 17 |
| 2000 | 37 |
| 2001 | 79 |

ATLANTIC COD LANDINGS, GEAR & METHOD 1970-2000

insignificant Landings & very stable

ATLANTIC COD LANDINGS, GEAR & METHOD 1990-2000

## COD LANDINGS
## BY GEAR TYPE

| Year | Rod/Reel/Hand (Open Acc.)* | Lines Long (Hooks)* | Otter Trawl Bottom | Recreational* |
|---|---|---|---|---|
| 1970 | 639.80 | 2,226.30 | 19,183.80 | 8,039.69 |
| 1971 | 397.10 | 3,381.10 | 19,618.20 | 8,039.69 |
| 1972 | 325.30 | 3,429.70 | 15,719.40 | 8,039.69 |
| 1973 | 337.90 | 3,598.50 | 17,488.30 | 8,039.69 |
| 1974 | 137.80 | 3,706.20 | 21,049.30 | 8,039.69 |
| 1975 | 179.90 | 3,658.20 | 18,760.40 | 8,039.69 |
| 1976 | 213.20 | 2,371.70 | 19,661.00 | 8,039.69 |
| 1977 | 174.50 | 2,271.90 | 28,827.10 | 8,039.69 |
| 1978 | 1,351.60 | 2,272.20 | 31,262.80 | 8,039.69 |
| 1979 | 1,127.70 | 3,092.30 | 35,606.30 | 8,039.69 |
| 1980 | 122.80 | 1,393.90 | 40,463.30 | 8,039.69 |
| 1981 | 651.50 | 409.00 | 36,602.20 | 8,039.69 |
| 1982 | 719.10 | 588.80 | 44,193.20 | 9,767.57 |
| 1983 | 499.80 | 945.90 | 42,109.60 | 6,615.03 |
| 1984 | 799.20 | 542.00 | 34,387.40 | 2,694.23 |
| 1985 | 344.40 | 969.10 | 29,166.80 | 10,468.21 |
| 1986 | 389.50 | 1,080.80 | 20,916.40 | 3,414.25 |
| 1987 | 364.50 | 1,879.50 | 19,498.50 | 4,076.57 |
| 1988 | 391.70 | 2,272.20 | 26,101.60 | 5,490.91 |
| 1989 | 268.40 | 1,953.10 | 25,433.90 | 3,225.05 |
| 1990 | 586.20 | 1,772.80 | 32,817.40 | 3,588.40 |
| 1991 | 450.50 | 2,552.90 | 30,391.30 | 4,221.50 |
| 1992 | 342.40 | 2,197.80 | 18,625.40 | 1,059.36 |
| 1993 | 128.50 | 1,675.20 | 14,926.00 | 3,238.20 |
| 1994 | 96.70 | 1,635.40 | 11,346.40 | 1,943.84 |
| 1995 | 170.00 | 1,787.70 | 7,285.30 | 2,191.72 |
| 1996 | 482.10 | 1,291.70 | 8,069.70 | 1,385.74 |
| 1997 | 426.30 | 1,349.90 | 7,361.10 | 1,189.17 |
| 1998 | 679.80 | 1,683.70 | 6,432.50 | 1,345.89 |
| 1999 | 491.10 | 1,648.90 | 5,576.20 | 1,179.17 |
| 2000 | 595.90 | 945.60 | 6,703.40 | 2,226.47 |

**TOTAL / GEAR** 13,265 MT 60,584 MT 695,564 MT 165,798 MT

**% BY GEAR** 1.4% ← very small % fishery 6.5% 74.4% 17.7%

**TOTALS ALL** 935,211

NOTE* Hook Gear catch assumes 100% mortality.
Actual landings would be lower due to cod released alive.

NOTE** No recreational data before 1981. Assume 1981 data for the years 1970-1981

U.S. District Court,
Washington, D.C.
Judge Gladys Kessler

RECEIVED

MAY 14 2002

CHAMBERS OF
JUDGE KESSLER

Dear Judge,

First let me introduce myself, my name is Nathaniel Dexter, soon to be 63 years old. I have been a commercial fisherman since 1961. As with most other fisherman I have been involved in virtually all varieties of the fisheries at one time or another. My primary fishery has always been lobstering. Over the years there have been many hills and dales. This is to be expected for many reasons, weather, poor breed year, over fishing, etc. There have been times when you had a hard time staying away from ground fish and times when they have been very scarce. These are natural phenomenons and happen in all species of animals and fish. A good analogy for this is in a trip I made to Denali Park in Alaska several years ago. The management people there do nothing to help or save any species of animal at any time of the year no matter what. When the elk or doll sheep heard gets big the wolves trim then down. Then the wolves all but disappear. The animals are not confined to 'no fishing' or 'breeding zones', they wander at will. Records of the park indicate that nothing has substantially changed in all of the time records have been kept.

This brings up a point that I just cannot comprehend, invisible fences and time outs for the fish. The fishery management people and the 'Save the –' whatever we are saving this week people certainly seem misdirected

and misinformed. They also have paying jobs no matter what the outcome of their actions when a decision has been made to protect a certain species as it has in the past. This directs all of the pressure to another species, instead of fisherman taking some of these and some of those. No one is going to fish until the last one is gone. Economics will dictate this.

This brings me to the crutch of this letter which is with a single stroke of the pen you have taken the biggest step ever in driving a spike into the coffin of the lobster fishery. This fishery is already at maximum capacity and yield (Fishery management's opinion) and now guess what?...we have another entire group of people in it. This is not the only problem that arises, guess what the codfish which you are saving eats as its favorite food...you guessed it - lobster. Every time I have cleaned a codfish this spring at least one lobster has been in its stomach. Now with what appears to be the biggest and still growing biomass of codfish in recent years what chance does a lobster have? So in closing I would like to congratulate you on personally being the individual to have put the lobster fishery to death, ooops, we save one species at the cost of another, well done.

Respectfully,

Nathaniel Dexter
201 Arlington St.
Marshfield, MA 02050
Soon to be ex-fisherman

04/30/1997 18:20 207-829-2753 MIKE PAGE 01

**Love Fisheries Inc.**
<F/V Titan>

**RECEIVED**

MAY 2 3 2002

CHAMBERS OF
JUDGE KESSLER

178 Haskell Road, N. Yarmouth, ME, 04097 (207) 818-1279 (207) 829-2754
lovefisheries@hotmail.com

May 23, 2002 No. Pages incl. this one: 1
The Honorable Judge Gladys Kessler
U.S. District Court for District of Columbia
332 Constitution Avenue
Washington, DC 20001

Dear Judge Kessler,

I am one of the parties that has recently asked that you review your groundfish decision. Many of the provisions in the ruling make our life much more difficult however the provision that puts me right out of business and destroys our heritage is the "averaging" of days at sea during the arbitrary 5 year period noted.

Judge, my fishing heritage started with my Grandfather, who arrived in America with nothing. His son, now my Father, taught me all I know of this business. Our Company Love Fisheries Inc. built a vessel F/V Katahdin in 1988, at that point there was a non family partner in the vessel. This partner decided that he wanted to leave the fishing industry. He was a 50% owner and I did not want to leave the fishing business. To make a long story short the boat was sold to the West Coast and Love Fisheries Inc. retained the "Fishing History" I would have re-permitted a replacement boat, however I was precluded from that because my former partner filed a court case in essence to gain control of the permit. In the end to settle just before going to trial a value of over $100,000 was put on the permit. I was forced to "pay up" or lose the permit to a third party whom my ex-partner wished to sell it to. I then looked from Maine to Alabama to find a new boat. As you might expect this all took a long time keeping me "out of the fishery" for at least 3 years of the "5 year period". It must be kept in mind that since 1988 Love Fisheries Inc.'s boat fished over 280 Days at Sea each year. This was well documented by NMFS in 1994. Then due to the regulations we decreased by 50% from 94' on to our current 140 DAS. The additional 20% cut (before averaging) specified in your ruling drops me to 112 DAS. This is hard to take but the averaging puts me out of business. Example: 5 years x 140 DAS= 700DAS / 5 years =140. -20%= 112 **Under averaging 2years x 140DAS= 280 / 5 years = 56 DAS less 20% = 44DAS.** This is why I am starting to sell off all that I have right down to a garage sale. This is so unnecessary there are more fish than ever out there. I have had my oceanography classes, I hold a degree in Nautical Science. I assure you that the fisherman have a much better idea on this than the group of manipulative "environmental industry litigation for-the-sake-of-litigation firms" behind this mess. With all of the closures, larger mesh, etc.. 112 DAS is a severe hardship, anything less is the end of my income and heritage. Please change this ruling. Thank You for your time and consideration.

Capt. Michael Love,
Owner, Love Fisheries Inc.

Charles F. Mazetis
P.O. Box 1018
Lakeville, MA 02347
May 16, 2002

RECEIVED

MAY 2 1 2002

CHAMBERS OF
JUDGE KESSLER

Judge Gladys Kessler
United States District Court
333 Constitution Avenue – NW
Washington, DC 20001

Dear Judge,

I am employed by the Trial Courts of Massachusetts, Superior Court, and also have been a recreational fisherman for thirty some odd years. I have witnessed a total collapse of what were the finest fishing grounds in the world.

It is difficult, as I have seen on a daily basis, to make far-reaching decisions that effect individuals as well as industry. In my opinion, you have made a fine decision upholding the Magnuson Act in which is the law as passed by Congress.

I am enclosing a recent article from our neighboring country, Canada, which in the past has regulated the fishing industry and will be forced to take drastic measures again. It will be up to Congress to change the law, if it chooses, in the interest of the Commercial Fishing Industry or let it stand for the future of generations that will swim in the sea.

I would like to congratulate you on a fine decision. Keep up the good work.

Sincerely,

Charles Mazetis

<< Back To Headlines

## Newfoundland scientist urges radical quota cut
*Source: OnlineMariner*
*Publication date: 2002-05-15*

The Canadian Press and The Telegram

ST. JOHN'S, Newfoundland (May 15) One of the federal government's top research scientists says current catch limits for Newfoundland's once-mighty northern cod fishery are not sustainable.

Peter Shelton, in a gloomy stock status report released Tuesday, said there's no scientific justification for the size of the existing commercial fishery, which reopened for small-boat fishermen in 1998 following a six-year moratorium.

Shelton, head of the cod research group at the federal Department of Fisheries and Oceans (DFO) in St. John's, admits there is a viable argument for an inshore fishery, but says the total allowable catch limits are too high.

"We may be causing a remnant in the inshore," he said.

"The current removals are not sustainable," said Shelton.

"We're pretty worried about the stock. There's no evidence of recovery."

His study found both the sentinel index and the commercial catch rate index are low.

The concentration of commercial and recreational fishing in the area is causing DFO scientists great concern.

Last season, then federal fisheries minister Herb Dhaliwal said 5,600 tonnes of cod could be taken from the waters off the east and north coasts of Newfoundland.

The limit had been reduced from 9,000 tonnes in 1999 amid earlier warnings from scientists.

Shelton said only 200 tonnes of cod is needed for scientific research. But it's up to the federal government to decide the level for the total catch.

Bad news

His report comes as bad news to fishermen and plant workers who draw their livelihood from the sprawling fishing zone known as 2J3KL.

"Clearly, this stock has not had the kind of recovery that everyone hoped for," said Earle McCurdy, head of the 23,000-member Fish Food and Allied Workers union.

80

"I don't know if (the allowable catch) is sustainable or not ... but it's certainly at a low level in relation to historical averages."

At its peak, the northern fishery was hauling in as much as 800,000 tonnes of cod annually in the late 1960s. But stocks collapsed in the late 1980s and a moratorium was imposed in 1992, throwing 40,000 Atlantic Canadians out of work.

Largest single layoff

It was the single largest mass layoff in Canadian history.

While it's true shrimp and crab have largely replaced cod as the backbone of Newfoundland's $1-billion fishing industry, these lucrative, highly mechanized industries have not replaced all the jobs lost in the early 1990s.

"The real question is why the (cod) fishery reopened in 1998," Shelton said. "One would assume it was for political and socioeconomic reasons. It wasn't for scientific reasons. ... Once the fishery is opened, the lid is off it."

Shelton's report is now in the hands of a federal advisory body, which will soon make its own recommendation to Fisheries Minister Robert Thibault.

"One would hope we'd be more conservation-minded now," Shelton said.

*Publication date: 2002-05-15*

© 2002, YellowBrix, Inc.

<< Back To Headlines

Home| |Commercial Fishing| |Inland and Coastal| |Offshore Services| |Passenger Vessels| |Contact Us| |Disclaimer | |Privacy Statement|

© Diversified Business Communications 2001
121 Free Street P.O. Box 7437 Portland, Maine 04112-7437
Tel: 207-842-5500 Fax:207-842-5503

